UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CATANYA VONTRICE MOORE,

      Plaintiff,                            Case No.  1:16-CV-462

v.

                                               HON. ELLEN S. CARMODY

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (ECF No. 9.)

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

### **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her

decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was thirty-nine years of age on the date of the ALJ's decision. (PageID.33, 253, 266.) She graduated from college with a degree in criminal justice, and was previously

employed as a corrections officer and tax preparer. (PageID.47, 61, 99.) Plaintiff has previously applied for benefits on several occasions. In the case immediately prior to the instant matter, Plaintiff's application was denied by Administrative Law Judge (ALJ) Lori Freund on January 25, 2012. (PageID.229–246.) The decision was upheld by the Appeals Council on May 9, 2013. (PageID.247–252.) It does not appear that application was further pursued. Instead, roughly two months later, on July 28, 2013, Plaintiff applied for DIB and SSI benefits alleging disability due to dysthymia, depression, and anxiety. Plaintiff also provided an amended alleged disability onset date of January 25, 2012, the day after the prior decision. (PageID.62, 253, 266, 333–342.)

Plaintiff's applications were denied on January 3, 2014, after which time she requested a hearing before an ALJ. (PageID.282–291.) On December 12, 2014, Plaintiff appeared with her counsel before ALJ Michael S. Condon for an administrative hearing at which time Plaintiff and a vocational expert (VE) testified. (PageID.55–111.) At the hearing, Plaintiff's counsel asked the ALJ to reopen her prior applications due to a diagnosis of narcolepsy after those decisions. In a written decision dated February 6, 2015, the ALJ declined to reopen the prior decisions and further determined that Plaintiff was not disabled. (PageID.33–54.) On March 3, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.24–30.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*. 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (noting that the ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

The ALJ determined that Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset

---

404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

date. (PageID.39.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) personality disorder; (2) dysthymic disorder / depressive disorder / major depressive disorder; (3) narcolepsy with cataplexy; and (4) periodic limb movement disorder. (PageID.39–40.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.40–42.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to doing only simple, routine and repetitive work that is performed in a low-stress work environment with no specific production quotas. She can have only occasional contact with the general public, coworkers, and supervisors and can tolerate no more than frequent workplace changes. She is limited to making simple work-related decisions. The claimant can have no exposure to hazards, including working at unprotected heights and around dangerous moving machinery and cannot operate motorized vehicles.

(PageID.42.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work. (PageID.47.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as a garment sorter (1,200 regional and 52,000 national positions), folder (1,100 regional and 49,000 national positions) and sorter of agricultural produce (1,000 regional and 49,000 national positions). (PageID.99–101.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.48.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from her amended

alleged onset date through February 6, 2015, the date of decision. (PageID.49.)

## DISCUSSION

### 1.     The ALJ's Step Three Determination.

The record contains reports from Plaintiff of difficulty falling asleep as well as staying asleep. She also described her sleep as broken, and Plaintiff often stated she would wake up feeling not rested. (PageID.447.) This fatigue can last throughout the day, and Plaintiff has reported difficulty being able to stay awake. For example, at a December 18, 2013, appointment with a consultative examiner, Plaintiff arrived twenty minutes early for her appointment and was found dozing in her chair. (PageID.457.) She has complained of being unable to work because of her fatigue. (PageID.456.)

Prior to 2014, it appears that Plaintiff's care providers believed her fatigue was largely due to her depression, as well as an iron deficiency. (PageID.532.) When she told one of her care providers in January 2014 that she had "trouble falling asleep, staying asleep and then will just fall asleep while sitting in a chair or at a computer," however, she was referred for a sleep study. (PageID.532.) It appears that the sleep center initially believed her fatigue was due to insomnia, and not necessarily narcolepsy. (PageID.498.) After further testing in April 2014, however, she was diagnosed with narcolepsy along with cataplexy and she was started with Xyrem to reduce her daytime sleepiness. (PageID.462–465.) More recent records indicate that Plaintiff stopped taking Xyrem after experiencing side effects, and she was started on substitute medication. (PageID.730.) In her first claim of error, Plaintiff contends that the ALJ's step three analysis is faulty. Namely, she argues the ALJ should have evaluated her epilepsy under Listing 11.02 and his failure to do so violates the requirements of the agency's Program Operations Manual System. (POMS). The Court

discerns no reversible error.

Plaintiff is correct that the POMS indicates that narcolepsy is mostly closely equated with Listing 11.02, the listing for Epilepsy.[2]  *DI 24580.005 Evaluation of Narcolepsy*, *Program Operations Manual System (POMS)*, SOCIAL SECURITY, https://secure.ssa.gov/apps10/poms.nsf/lnx/0424580005 (Sept. 26, 2016).  It is unclear, however, whether this requirement was in effect at the time the ALJ made his decision. *See id.* (noting an effective date over a year after the ALJ's decision).  Even assuming it did apply, POMS is an internal agency manual.  Its guidelines have no legal force, and an ALJ's failure to follow the POMS is not legal error. *See Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir.1989) ("POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law . . . ."); *see also Wells v. Astrue*, No. 09–32, 2009 WL 3400911, at * 4 (E.D. Ky. Oct. 20, 2009).  POMS guidelines, where applicable, provide persuasive authority. *Davis*, 867 F.2d at 340.  Accordingly, even assuming the ALJ failed to correctly apply the POMS, such failure is not reversible error.

Moreover, to the extent Plaintiff now argues her narcolepsy equals the requirements of Listing 11.02, she has not meet her burden.  *See Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987.)  "To demonstrate such a medical equivalent, the claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original)); *Thacker v. Soc. Sec. Admin.*, 93 F.

---

[2] Plaintiff is incorrect, however, to the extent that she claims the POMS states the closest listing is 11.03.  It is 11.02.

App'x 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that [she] meets or equals a listed impairment, [she] must present specific medial findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describe how the impairment has such equivalency.").

Plaintiff has made no attempt to satisfy her burden of demonstrating equivalence. The medical evidence that has been presented does not include any opinion by an acceptable medical source indicating that Plaintiff had impairments equivalent in severity to the criteria of any listed impairment, individually or in combination. Plaintiff did not satisfy her burden by ignoring it. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014); *Hayes v. Comm'r of Soc. Sec.*, No. 1:09-cv-1107, 2011 WL 2633945, at *5 (W.D. Mich. June 15, 2011). Plaintiff's argument would be more compelling it if had been presented in the context of a request for remand under sentence six of 42 U.S.C. § 405(g) and if it were accompanied by an opinion from an acceptable medical source offering his or her opinion that, during the period at issue, Plaintiff's narcolepsy met or equaled the requirements of Listing 11.02. Plaintiff offers no such evidence or argument.

Instead, Plaintiff faults the ALJ for making the following statement: "The claimant's representative argued that just having a diagnosis of narcolepsy is enough to find disability and that having narcolepsy was work preclusive. However, there is no indication that narcolepsy is untreatable or intractable; rather, like other conditions, it is treatable. The undersigned has considered appropriate limitations in the residual functional capacity in this decision." (PageID.37.) It is unclear exactly how Plaintiff claims the ALJ erred here. Contrary to Plaintiff's assertion, the ALJ did not say that narcolepsy was incurable, rather he merely noted that there was nothing to show it was untreatable. Nothing in Plaintiff's brief suggests otherwise. To the extent Plaintiff

claims that she is disabled because she has been diagnosed with narcolepsy, it is well settled that "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)); *see, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of arthritis, of course, saying nothing about the severity of the condition").

For all the above reasons, Plaintiff's first claim of error is denied.

### 2. The ALJ's Determination Not to Reopen the Prior Application.

As noted above, at the administrative hearing Plaintiff's attorney asked the ALJ to reopen the prior applications in light of Plaintiff's recent diagnosis of narcolepsy. The ALJ did not do so, noting Plaintiff's amended onset date was dated later than the prior application. (PageID.36.) In her second claim of error, Plaintiff argues "[t]here also appears to be no competent reason for the ALJ's refusal to reopen the previous ALJ decision in light of the new evidence of Plaintiff's diagnosis of narcolepsy." (PageID.814.)

Plaintiff's claim is procedurally barred. It is clear that this Court lacks jurisdiction to review an ALJ's decision denying a plaintiff's request to reopen a prior application. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977); *see also Anderson v. Comm'r of Soc. Sec.*, 195 F. App'x 366, 369 (6th Cir. 2006) ("[O]rdinarily federal courts do not have jurisdiction to review an ALJ's decision not to reopen a prior application."); *Swartz v. Barnhart*, 188 F. App'x 361, 370 (6th Cir. 2006). Plaintiff has also not asserted a colorable constitutional claim. In the absence of a colorable constitutional claim, the ALJ's decision not to reopen is not subject to judicial review. *See McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 45 (6th Cir. 1995); *Cottrell v. Sullivan*, 987 F.2d 342, 345 (6th

Cir. 1993); *see also Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 314 (6th Cir. 2004).

Plaintiff's citation to *Fox v. Bowen*, 835 F.2d 1159, 1162–1163 (6th Cir. 1987) is inapposite. That case "upheld the Appeals Council's authority to reopen a disability decision more than one year after the ALJ's initial decision, based on a showing of 'good cause' under 20 C.F.R. § 404.988b." *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 615 (6th Cir. 2010). It does stand for the proposition, as Plaintiff states it, that an ALJ must reopen a prior application upon request.

Accordingly, Plaintiff's second claim of error is denied.

### 3.     The ALJ's Step Five Determination.

Plaintiff also argues that the ALJ's finding at step five of the sequential evaluation process is unsupported by the evidence. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 3,300 regional and 150,000 national jobs in the economy. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.**

A separate judgment shall issue.


Date: March 1, 2017               /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  United States Magistrate Judge